David C. Wakefield, Esq.    Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
Telephone:  619.241.7112; Facsimile:  619.342.7755
E-mail:    dcw@DMWakeLaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RALPHA HAROLD MACK, JUNIOR, UAAAC MEMBER;**<br><br>            **Plaintiff,**<br><br>        **v.**<br><br>**CASA GRANDE THOUSAND OAKS, LTD., A LIMITED PARTNERSHIP dba St Charles Oaks Apartments; AND DOES 1 THROUGH 10, Inclusive**<br><br>            **Defendants.** | **Case No:**<br><br>**COMPLAINT**<br><br>**DISCRIMINATORY PRACTICES**<br>**[US Fair Housing Act of 1988 [**42 U.S.C. §§ 3600 et seq, §3604(c), §3604(f)(1-3), Et Seq. CA Government Code 12925, 12927, 12955; CA Civil Code §§ 51, 52, 54.3**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     This case involves system-wide housing discrimination in violation of the Fair Housing Act Amendments of 1988 (FHAA), the California Disabled Persons Act (CDPA), CA Unruh Civil Rights Act (UCRA), and California Fair Employment

1

and Housing Act (CFEHA). Therefore, Plaintiffs make the following allegations in this civil rights action.

## JURISDICTION AND VENUE

2.      Defendants' property that is the subject of this action is an apartment complex located in Los Angeles County.

3.      The federal jurisdiction of this action is based on the 42 U.S.C. §§ 3601, 3604 et. Seq. - the Fair Housing Act Amendments of 1988.  Venue is proper in this United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b), because a substantial part of Plaintiffs' claims arose within said Judicial District.

## SUPPLEMENTAL JURISDICTION

4.      This United States District Court for the Central District of California has supplemental jurisdiction over the California state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper in this action is that because all the causes of action or claims derived from federal law, and those arising under CA state law, as herein alleged, arose from common nucleus of operative facts.  The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiffs and at least one association member were denied full and equal access to Defendants' rental services and/or goods in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' facilities where said rental services and goods were located or should have been provided.   Further, due to this denial of full and equal access, Plaintiffs and other individuals with disabilities were injured.  Based upon said allegations, the California causes of actions, as stated herein, are so related to the Federal claims that they form part of the same case or controversy, and these claims would ordinarily be expected to be tried in one judicial proceeding.

2

## NAMED DEFENDANTS AND NAMED PLAINTIFFS

5.     The term Plaintiffs as used herein specifically include the corporate Plaintiff entity known as the United African-Asian Abilities Club ("Club" or "Association") and Plaintiff 011 UAAAC Member.  Plaintiff "011 UAAAC Member" or "011 Member" is also known as the individual Ralpha Harold Mack, Junior. The Club is not named within the Complaint. However, if the court deems the Club to be a necessary party, the individual Plaintiff will file a motion to amend.

6.     Defendants are, and, at all times mentioned herein, were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California.

7.     Plaintiffs are informed, and believe, and thereon allege that CASA GRANDE THOUSAND OAKS, LTD., A LIMITED PARTNERSHIP dba St Charles Oaks Apartments is the operator of the apartment rental business known as St. Charles Oaks Apartments located at 800 St Charles Dr, Thousand Oaks, CA 91360. Plaintiffs are informed, believe, and thereon allege that Defendant CASA GRANDE THOUSAND OAKS, LTD., A LIMITED PARTNERSHIP dba St Charles Oaks Apartments is the owner, operator, and/or lessor of the real property located at 800 St Charles Dr, Thousand Oaks, CA 91360 (hereinafter referred to as the Property).

8.     Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of Defendant CASA GRANDE THOUSAND OAKS, LTD., A LIMITED PARTNERSHIP dba St Charles Oaks Apartments. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs and Plaintiff Association will pray for leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

9.     Plaintiffs, including Plaintiff Association, are informed, believe and thereon

3

Complaint
CASE #

allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs, including Plaintiff Association are further informed and believe, and thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

10.    Plaintiffs allege that Defendants have been and are engaging in a system-wide failure to provide required reasonable accommodation services and modification services, and a failure to remove architectural, communication, and other access barriers to their rental services, which constitutes discrimination against the Plaintiffs.   Plaintiffs also allege Defendant's failure to follow the required policies to comply with the FHA, CPDA and UCRA, and/or Defendants failure to adopt policies in compliance with said laws also constitutes discrimination against the Plaintiffs.

## **CONCISE SET OF FACTS**

11.    Plaintiff Ralpha Harold Mack, Junior, 011 UAAAC Member ("011 Member") has physical impairments and due to these impairments he has learned to successfully operate a wheelchair for mobility. Plaintiff 011 Member has cerebral palsy and is unable to walk any distance.  Plaintiff 011 Member said physical impairments substantially limit one or more of the following major life activities including but not limited to: walking.     Additionally, Plaintiff 011 Member upper body range of motion and the dexterity of his hands are substantially limited. Plaintiff 011 Member also has vision disabilities.  Plaintiff 011 Member resides in

4

Los Angeles County and the association Plaintiff Club has been assisting Plaintiff 011 Member in his search for an accessible apartment for a year. Individual Club Member 008 and Club Member 010 help Plaintiff Member 011 in attempting to find accessible apartments for rent.  Club Member 010 also has a disability. Plaintiff 011 Member was also expressly deterred from Defendant's property due to Plaintiff 011 Member's knowledge of the existence of access problems to Defendant's rental services and facilities. This case relates to the fact that the Plaintiff made a request for reasonable accommodation to apply at the apartments and the Defendant failed to respond to the request. Plaintiff 011 Member planned to return to Defendant's rental property in 2017 but was deterred from returning due to his knowledge that Defendant's existing physical and communication barriers would preclude Plaintiff 011 Member's being able to access Defendants rental services located within its facilities at the property.  Plaintiff 011 Member and Plaintiff Club have specific plans to return at the conclusion of this case to obtain rental information and to verify that the Defendants have ceased its discriminatory conduct by removing the barriers to access.

12.    Defendant operates an apartment property. The property is located at 800 St Charles Dr, Thousand Oaks, CA 91360.  The property was built in 1972 and has 2 stories with 124 units. The rent is approximately: 1 Bedroom $1,665, 2 Bedrooms $1,875, 3 Bedrooms $2,445.  The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Accent Walls, Bay Windows, Built In Bookshelves, Courtesy Patrol, Recycling Service, Vinyl Flooring, Walk In Closet, Cats Allowed 2 Pet Maximum. $200 pet fee for 1st Pet. $100 Pet Fee for Second Pet. $200 Deposit, 20 lb Weight Limit, 2 Pet Limit, Parking Surface Lot Covered 1 space; Assigned Parking. 1 Assigned carport included with each unit. Lease Length, 6 - 12 Month Leases,

5

Laundry Facilities, Maintenance on site, Property Manager on Site, Courtesy Patrol, Recycling, Storage Space, Pool, Playground, High Speed Internet Access, Washer/Dryer, Air Conditioning, Heating, Ceiling Fans, Storage Units, Double Vanities, Tub/Shower, Wheelchair Accessible (Rooms), Dishwasher, Disposal, Oven, Range, Refrigerator, Carpet, Vinyl Flooring, Dining Room, Built-In Bookshelves, Walk-In Closets, Linen Closet, Window Coverings, Accent Walls, Balcony, Patio.  The property advertises on http://stcharles.oaksmgmt.com/, apartments.com, forrent.com, apartmentratings.com, rentcafe.com, yelp.com, rent.com, apartmentfinder.com.  It is very important to know that on http://stcharles.oaksmgmt.com/, apartments.com, forrent.com, rentcafe.com, rent.com, apartmentfinder.com, there is the equal housing opportunity logo.  The plaintiff alleges that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities. For example, the tow signage was not installed. The accessible parking space had an access aisle, which was not van accessible. The aisle did not have the "no parking" included in the access aisle. The office had a high threshold. There was no International Symbol of Accessibility signage.  The Internet does not state the accessible amenities at all.  Also, the statement the "equal housing opportunity statement" is misleading. In fact, the property is not completely accessible. All the above facts and the facts stated herein have a disparate impact on the disability community.

13.   Club Member 008 and Club Member 010 assisted Plaintiff 011 Member in determining if the subject apartments were accessible for him. Defendant operates an inaccessible apartment property. Plaintiff Club and Plaintiff 011 Member experienced the following prohibited access problems that exist at Defendant's facilities that prevents equal access to Defendant's rental services and that also

6

Complaint
CASE #

currently deters Plaintiff 011 Member return to Defendant's property.  Plaintiff 011 Member would further experience hardship, difficulty, and distress as a result of the access problems at Defendant's property.  The examples listed below of known barriers to equal access are not an exhaustive list of the barriers to equal access that relate to Plaintiff 011 Member's disabilities that exist at Defendants' facilities.

The path of travel has steps without access way signs.  Without way signs the public and residents would need to search for the accessible entrance or presume that there is not an accessible entrance. Also, the doorknob required tight twisting.  Many elderly and residents have difficulty grasping round doorknobs. Moreover, the threshold was too high for the public and residents using mobility equipment. Most of the mobility mechanisms have front tires. The tires cannot stratagem over thresholds that are higher than 1 inch. If the threshold is higher than 1 inch, the person using a mobility device cannot maneuver over it.  Additionally, the parking lot had no accessible parking.  The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessibility, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance. Also, the parking space must be the closest to the entrance. Moreover, the stairways had no color contrasting for people with eye conditions.  In fact, none of the steps found had color contrasting. People with sight conditions have a problem distinguishing between colors that are very similar. If the person with a sight condition cannot distinguish between colors within the path of travel or steps the person will not be able to traverse within the environment. Color contrasting allows people with sight conditions to distinguish between objects within the environment and to enable them to safety negotiate traversing the environment.

Complaint
CASE #

14.   When Plaintiff Club association tested Defendants' facilities it discovered that UAAAC Member 011 and other members would be denied equal access to and would have difficulty using Defendant's rental housing' services and facilities since Defendants' facilities failed to comply with the Housing Accessibility Guidelines – Title 24 of the California Building Code. Also, the Defendant failed to comply with the readily achievable ADA accessibility guidelines related to the area that was open to the public, including but not limited to the office.  Additionally, Defendants failed to remove policy, service, program or physical barriers to equal access within their housing facilities.

15.    Defendants' Internet picture advertising has a disparate impact on Plaintiff Member 011. There are apartments on the Internet that advertise disability and accessible features. For example, on http://www.rent.com/california/valley-village-apartments/the-avery-4-64371353, the apartment called Avery Apartments shows a photograph of the pool with the assistive lift device. The following is the picture from the Avery Apartments:



16.    Reasoning that neither the broadly drafted statute nor its legislative history "suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preference," the Second Circuit has held that "in some circumstances" an ad using human models of one race to the exclusion of others may indicate a racial preference violative of § 3604(c), regardless of the absence of

8

Complaint
CASE #

any facially discriminatory verbal message. *Id.; see also HOME,* 943 F.2d at 647–48 & n. 4 ("discrimination [under the FHA] may occur through words or pictures, and the use of all-white models could be factor in determining whether an advertisement conveys a discriminatory message...."); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 34–35 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer,* 774 F.Supp. at 364–66; *Saunders,* 659 F.Supp. at 1058. This reasoning applies here.

17.    Defendants' Internet pictures suggest a preference for people without disabilities. The Internet picture of the street view does not provide any depiction of any access for people with disabilities. The Internet picture of the apartments view does not provide any depiction of any access for people with disabilities.

18.    Plaintiff Club diverted its time and resources because of service, policy, program and physical barriers at Defendants' property. Club personnel conducted detailed Internet search determine if Defendants have large print, deaf interpreter, therapy animal and access structural changes to unit at cost of tenant policies. Further, the Club retained contractors to investigate said policies, to survey the property, to photograph the property, to investigate when the property was constructed, to investigate the property ownership and to have an access report prepared.  Due to these necessary activities, Plaintiff Club's time and resources were diverted.   Plaintiff Club also diverted staff to investigate Defendants' Internet presence to determine compliance with the FHA and ADA. Plaintiff Club created a report of the findings which also included Plaintiff Club's investigation into Defendants' written material such as brochures, rental applications and leases. Moreover, Plaintiff Club made an oral investigation to ascertain Defendants' companion animal, deaf interpreter and unit retrofitting policies. The findings were: Defendant's facility does not have anything posted regarding service animals.

Complaint
CASE #

Defendant's facility does not have any hearing-impaired smoke/fire alarms located at the facility.  Defendant's facility does not have a TTY machine available on-site. Plaintiff Club also caused a physical access consultant to be retained to survey Defendants' facility. These findings are set forth in an Access Report.  The Access Report findings show that the following areas of access violations exist at Defendant's property:  parking, entrance, path of travel, accessible route, office entrance and the signs.

19.     Plaintiffs and Plaintiff Association can prove these barriers to equal access to Defendant's rental services exist since Plaintiffs confirmed the access barriers at Defendants' facility. Plaintiffs specifically allege that Defendants knew, to a substantial certainty, that the policy, service, program and architectural barriers precluded wheelchair access by the disabled including Plaintiff 011 Member. First, Plaintiffs and Plaintiff Association will prove that Defendants had actual knowledge that the architectural barriers precluded access.

20.     Second, due to the abundance of disability rights information and constant news coverage of disability discrimination lawsuits, Defendants had actual knowledge of the state disability laws and access requirements and decided deliberately not to remove policy, service, program and architectural barriers. Plaintiffs and Plaintiff Association allege any alternative methods preclude integration of wheelchair patrons, as it requires them to use second-class facilities. Also, expert testimony will show the facility contained inaccessible features.

21.     Plaintiff 011 Member and at least one association member intend to return to Defendants' housing facilities in the immediate future to use their rental servicdes and goods.  Plaintiff 011 Member frequently travels in the vicinity of Defendant's facility.  Plaintiff 011 Member and specifically at least one other Plaintiff Club member intends to return to Defendants' housing facilities at the conclusion of this

Complaint
CASE #

case to use their rental services and goods, including but not limited to rental applications and obtaining further rental information and brochures.

22.     Pursuant to state law and federal housing access requirements, Defendants are required to remove barriers to their existing facilities.  Further, Defendants had actual knowledge of their access barrier removal duties under the state disability laws.  Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove service, policy, program and architectural barriers to access.

23.     Plaintiffs and Plaintiff Association believes and herein alleges Defendants' facilities have access violations not directly experienced by Plaintiff 011 Member but are related to his disability that would preclude or limit equal access by Member 011, potentially including but not limited to, violations of the FHA, ADAAG, and Title 24 of the California Building Code.

24.     Based on these facts, Plaintiffs, including but not limited to Plaintiff 011 Member, allege they were discriminated against each time they attempted to patronize Defendant's rental services and facilities.

///

///

**STANDING**

25.     Plaintiff, un-named, Club has standing to sue on its own behalf or on behalf of its members as stated herein. Organizational standing is separate from the standing of the organization's members, turning instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties and Development Corp.,* 358 F.3d 1097, 1101 (9th Cir.2004) (citing *Havens Realty*

11

*Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As a corporation, plaintiffs are "persons" protected by the statute. *See Havens,* 455 U.S. at 378–79 & n. 19, 102 S.Ct. 1114; *Walker v. City of Lakewood,* 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy the requirement for individual standing: "a demonstration of concrete and particularized injury giving." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also Havens,* 455 U.S. at 378–79, 102 S.Ct. 1114. In *Pacific Properties,* the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.2002) that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Pacific Properties,* 358 F.3d at 1101 (citing *Fair Housing,* 285 F.3d at 905). Testers have played a long and important role in fair housing enforcement, stemming from the Supreme Court's three-decade-old determination that with the Fair Housing Act, Congress intended to establish a broad set of rights to be free from housing discrimination, and that as a general rule, courts should not erect standing barriers—other than the minima required by Article III—to those seeking to vindicate these rights. *See Havens,* 455 U.S. at 372–73, 102 S.Ct. 1114; *see also Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The high court more recently cautioned that courts be no less generous in interpreting provisions added to the Fair Housing Act by the Fair Housing Act. *See City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Here, Plaintiff-UNITED AFRICAN-ASIAN ABILITIES CLUB (hereinafter referred to as UAAAC, Club or Association) is an

12

organization that advocates on the behalf of its members with disabilities when their civil rights and liberties have been violated.  Members of that organization include members that have disabilities that relate to the service, policy, programs and physical accessibility barriers at the property; those disabilities include, but are not limited to, sight, mobility disabilities and hearing disabilities.  Plaintiff United African-Asian Abilities Club has members who have been deterred from accessing Defendant's apartment rental services within Defendant's facilities.  |The Club or Association is an international group that was started in 2011. One of the Club's core missions is to reduce charitable or public assistance dependence by people with mental and physical conditions by promoting business and employment opportunities. Another critical mission of the Club is to provide written testimony concerning proposed laws related to people with disability conditions.

26.      Further, another core mission of Plaintiff Association is to provide counseling and referral housing services to minorities with sight, mental, hearing and physical disability conditions. The Club's mission is frustrated by the rampant violations of the Fair Housing laws. In fact, Plaintiff Club association started its mission in 2011, but through its past experience believes it is very difficult or futile for the most part. Another core mission of Association is searching for accessible businesses and giving awards to them for being voluntarily compliant. These businesses include apartments. As alleged with specificity herein, Plaintiffs had to divert time and resources to investigate Defendants. As in Smith, 358 F.3d 1105, a further mission of the group is to eliminate disability discrimination. These missions are not abstract social interests of the Club. Without access to housing people with disabilities cannot live alone. Plaintiff United African-Asian Abilities Club members have associational standing to maintain this action.  The U.S. Supreme Court has set out three requirements for an associational plaintiff to have standing under U.S. Const.

Complaint
CASE #

art. III to sue on behalf of its members: (1) its members must have standing to sue on their own.  The United African-Asian Abilities Club's members have mobility, hearing, sight and other disabilities covered by the Fair Housing Act; (2) the interests he/she seeks to protect must be germane to the organization's missions. The missions of United African – Asian Abilities Club are stated above; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit, the United African – Asian Abilities Club is only seeking organizational damages and injunctive relief and not seeking to recover damages for the individual members. Such associational standing requires that at least some members would have standing to sue in their own right.  The first two factors are required by the Constitution and the third is a judicially self-imposed limit on the exercise of federal jurisdiction that Congress may remove by statute.  In determining whether UAAAC has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff " 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S., at 261, 97 S.Ct., at 561 (emphasis omitted), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). There can be no question that the Club has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club v. Morton*, 405 U.S., at 739, 92 S.Ct., at 1368.

27.     Initially in year 2011, the United African Asian Abilities Club was founded as a non-incorporated association by two Black men that use a wheelchair and one mother of a young Black man that uses a wheelchair. Google shows that the UAAAC created a blog on February 17, 2012. The blog address is

14

uaaaclub.blogspot.com. Started on February 17, 2012, the blog documented the discrimination based by Blacks and Asians with disabilities, the fact that Blacks and Asians with disabilities make up the largest minority within the world, provides information about how minorities with disabilities can work, provides information about Filipinos with Autism live within Carmona, Cavite, provides information on the Asian with disabilities outreach think tank. There are too many articles to list here that are on the blog. However, most were posted before September 25, 2016. The Club has a detailed method for determining what company will receive the YES award. The method includes having a UAAAC member test access compliance by visiting the property and conducting a survey. Also, the member requests information from the company. Thereafter, all of the information is evaluated by the awards committee. The on-site tester receives a payment for the services.  All of the awardees are posted on the UAAAC blog.  During the last two years the club provided accessibility awards to the following:

1)    9021 PHO, 1164 Glendale Galleria Way, Glendale, CA 91210
2)    Best Western Burbank Airport Inn, 7615 Lankershim Blvd, North Hollywood, CA 91605
3)    Alegro Restaurant, 423 N Brand Blvd, Glendale, CA 91203
4)    America's Tire, 4817 E Ramon Rd, Palm Springs, CA 92264
5)    Americas Best Value Inn, 625 E 5th St, Beaumont, CA 92223
6)    Army Navy Surplus Value Center, 3828 W Sunset Blvd, Los Angeles, CA 90026
7)    Avalon at Riverwalk, 4525 Sierra Vista Avenue, Riverside 92505
8)    Bar Verde, 889 Americana Way, Glendale 91210
9)    Best Shawarma, 602 W Glenoaks Bl, Glendale 91202
10)    Best Western Golden Triangle Inn, 2575 Clairemont Drive San Diego 92117
11)    Best Western Plus Island Palms, 2051 Shelter Island Drive San Diego 92106
12)    Boulder Creek Apartment Homes, 2442 Iowa Avenue Riverside CA 92507
13)    Brand 158, 158 S Brand Blvd, Glendale, CA 91204

15

Complaint
CASE #

14)     Brand Grill 1200, S. Brand Bl, Glendale 91205
15)     Burger Boss, 2585 Canyon Springs Pkwy, Riverside 92507
16)     Cafe Bravo, 1135 W Glenoaks Blvd, Glendale, CA 91202
17)     Caliente Tropics, 411 E Palm Canyon Dr, Palm Springs, CA 92264
18)     Canyon Park Apartment, 3100 Van Buren Boulevard, Riverside, CA 92503
19)     Caravan Restaurant, 1108 W Glenoaks Blvd, Glendale, CA 91202
20)     Casa De Ramos, 827 W Glenoaks Blvd, Glendale, CA 91202
a.     21.     CasaLago Eastlake Apartments 2816 Cielo Circulo, Chula Vista, CA 91915
21)     Centro, 45 E 12th St, National City, CA 91950
22)     Colony Inn North Hollywood, 4917 Vineland Ave, North Hollywood, CA 91601
23)     Comfort Inn, 2201 Hotel Circle S, San Diego 92108
24)     Comfort Inn & Suites LAX Airport Inglewood, 4922 W Century Blvd, Inglewood, CA 90304
25)     Concord Square Apartments, 2700 Iowa Ave, Riverside 92505
26)     Copper Canyon Apartment Homes, 1234 W Blaine St, Riverside, CA 92507
27)     Corona Motel, 845 E Manchester Ave, Los Angeles, CA 90001
28)     Corona Pointe Resort, 3957 Pierce St, Riverside, CA 92505
29)     Crystal Fantasy, 268 N Palm Canyon Dr, Palm Springs, CA 92262
30)     D'Elia's Grinders, 2093 University Ave, Riverside, CA 92507
31)     Damon's Steak House, 317 N Brand Blvd, Glendale, CA 91203
32)     Din Tai Fung, 177 Caruso Ave, Glendale, CA 91210
33)     Duane's Prime Steak & Seafood, 3649 Mission Inn Avenue, Riverside, CA 92501
34)     Eden Burger Bar, 333 N Verdugo Rd, Glendale, CA 91206
35)     Eggs 'N' Things, 27560 Newhall Ranch Rd #301, Valencia, CA 91355
36)     El Morfi Grill, 241 N Brand Blvd, Glendale, CA 91203
37)     Holiday Inn Express & Suites Los Angeles Downtown West, 611 South Westlake Avenue, Los Angeles, CA 90057
38)     Mikado Hotel, 12600 Riverside Dr, North Hollywood, CA 91607
39)     SUPER 8 LOS ANGELES DOWNTOWN, 1341 W Sunset Blvd,  Hwy 101 Exit Alvarado St,  Los Angeles, CA 90026
40)     LA Rentals, 3251 W 6th St Ste 109 Los Angeles, CA 90020
41)     The Vermont, 3150 Wilshire Boulevard Los Angeles, CA 90010
42)     BJ's Restaurant & Brewhouse, 460 The City Dr S,  Orange, CA 92868

16

Complaint
CASE #

43)    BJ's Restaurant & Brewhouse, 13130 Jamboree Rd,  Irvine, CA 92602

44)    BJ's Restaurant & Brewhouse, 121 Stonewood St,  Downey, CA 90241

45)    Buffalo Wild Wings, 8301 On the Mall,  Buena Park, CA 90620

46)    Jersey Mike's Subs, 5974 Orangethorpe Ave,  Buena Park, CA 90620

47)    Little Sparrow, 300 N Main St,  Santa Ana, CA 92701

48)    Taqueria El Triunfo, 1840 S Standard Ave # 107,  Santa Ana, CA 92707

49)    Yellow Basket Restaurant, 2860 S Main St,  Santa Ana, CA 92707

50)    Zov's Anaheim, 1801 E Katella Ave #1001,  Anaheim, CA 92805

51)    Cafe Rio Mexican Grill, 1140 Irvine Blvd, Tustin, CA 92780

52)    Chick-fil-A, Gridley Rd,  Cerritos, CA 90703

53)    Coco's Bakery Restaurant, 110 W Katella Ave,  Anaheim, CA 92802

54)    Crave Restaurant Downtown Santa Ana, 410 W 4th St,  Santa Ana, CA 92701

55)    Farrell's Ice Cream Parlour Restaurant, 8650 Beach Blvd,  Buena Park, CA 90620

56)    Mrs. Knott's Chicken Dinner Restaurant, 8039 Beach Blvd,  Buena Park, CA 90620

57)    Polly's Pies Restaurant, 2660 N Main St,  Santa Ana, CA 92705

58)    Specialty's Cafe & Bakery, 18400 Von Karman Ave,  Irvine, CA 92612

59)    Zov's Bistro Tustin, 7440 E 17th St,  Tustin, CA 92780

28.    Between 2011 to 2016 the Club assisted people with disabilities looking for accessible apartments. The way the Club determines award is by conducting a site survey of companies and decides what award to give to the company. The company does not need to request to award or does not need to compensate the Club for the award. Between 2014 and 2015 the Club also conducted lobbying efforts related to disability rights. In 2015 the Club started to help Filipino with disabilities living in the Philippines to market goods and ladies bags. Also, the UAAAC conducts an educational program for children with or without disabilities living in the poor area of the Philippines and the UAAAC creates job training programs for the children that are 14 and above. The bag marketing and the children programs have suffered because the UAAAC had to divert time to this case. Before 2016, the Club helped people with disabilities living in Los Angeles related to finding accessible apartment

17

Complaint
CASE #

without any success.  The Club keeps the records of membership. The Club members include Member 001, a wheelchair user; Member 002, a wheelchair user; Member 003, a mother of a person with cerebral palsy; Member 004, a wheelchair user; Member 005, a person with cerebral palsy; Member 006, a person with cerebral palsy; Member 007, sister of a young man with cerebral palsy; Member 008, a woman with one leg; Member 009, a deaf person; Member 010, an advocate; Member 011, a person with cerebral palsy; Member 012, a daughter of a person with cerebral palsy; Member 013, a person with a sight disability;  and Member 014 an advocate.

29.    The Club is a corporate entity that has the authority to conduct business within California. Before February 2015, more than two members were responsible for issuing the awards, for finding apartments, for lobbying and for marketing for the Club. The Club wrote a request by email to the defendant requesting the reasonable accommodation. No one ever responded to the request. When the Club was created back in 2011, the Club was not organized for the purpose to file lawsuits, rather the Club was organized, in part, to advocate for minorities with disabilities. However, the Club discovered that most people do not listen to minorities with disabilities without a lawyer. In the year 2011 SB 1186 was moving through the California Legislature. The 3 founders felt minorities were not represented in opposing SB 1186. The Founders created the UAAAC in large part to opposed the bill. On February 19, 2012, the Club started assisting its disabled members in finding accessible apartments. On February 27, 2012, the Club wrote a report. The report found that access to residential apartments is very hard to find for minorities with disabilities. On March 24, 2012, the Club created the goal of marketing goods made by people with disabilities from the Philippines. On May 29, 2012, the Club created Awardee Tester Guidelines. On January 22, 2013, the guidelines were updated. The

18

Club spent the remainder of year 2012 and year 2013 evaluating companies for access issues and organizing the Club. In year 2014 the Club did further evaluations. On February 14, 2014 the Club started lobbying against SB 67, AB 54, AB 56 and SB 251.

30.    The Club emailed, faxed and mailed letters to all of the elected California politicians and disability groups. From February until September the Club conducted lobbying. The Club created the ladies bag catalog on September 1, 2015 to market the ladies bag.

## WHAT CLAIMS PLAINTIFFS ARE ALLEGING AGAINST EACH NAMED DEFENDANT

31.    CASA GRANDE THOUSAND OAKS, LTD., A LIMITED PARTNERSHIP dba St Charles Oaks Apartments and Does 1 through 10 will be referred to collectively hereinafter as "Defendants."

32.    Plaintiffs aver that the Defendants are liable for the following claims as alleged below:

### DISCRIMINATORY PRACTICES IN HOUSING ACCOMMODATIONS

FIRST CAUSE OF ACTION: Violation of the US Fair Housing Act

Based on the facts plead at ¶¶ 9 - 23 above and elsewhere herein this complaint, Plaintiff Club and Plaintiff 011 Member suffered discrimination in violation of FHA sections 42 § 3604(c), and § 3604(f)(1- 3) as further detailed below. The Federal Fair Housing Act applies to Defendants apartment complex since it has more than 4 residential units.

CLAIM I: Failure to Engage in Interactive Process In Violation Of The Fair Housing Act And California Fair Employment And Housing Act

33.    Prospective renters have the right to reasonable accommodations by request.

Complaint
CASE #

Giebeler v. M & B Associates, 343 F.3d 1143 (2003). Plaintiff contends that Defendant failed to engage in a good-faith interactive process with [him/her] to determine whether it would be possible to implement effective reasonable accommodations so that Plaintiff to apply for a lease or to allow Plaintiff to visit the apartments. In order to establish this claim, Plaintiff must prove the following: That Defendant was a housing provider; That Plaintiff was a prospective renter; That Plaintiff had a physical condition; That Plaintiff requested that Defendant make reasonable accommodation for [his/her] physical condition so that [he/she] would be able to apply for a lease or to allow Plaintiff to visit the apartments by sending a letter. Due to the physical barriers as alleged herein which may or may not be required to be removed, Plaintiff requested how the manager would accommodate him to access the apartments without removing said barriers. Plaintiff is insecure about applying for a lease or visiting the apartments knowing about said barriers. Thus, Plaintiff made a reasonable accommodation request to determine if Defendant could enable him to lease or visit the apartments without removing said barriers. Plaintiff had the Club personally make said request. Plaintiff went on the Internet to determine how and where to make the request without success; That Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that [he/she] would be able to apply for a lease or to allow Plaintiff to visit the apartments; That Defendant failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made; That Plaintiff was harmed; and That Defendant's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

Claim II:  Discrimination In Violation of 42 § 3604(f)(3)

34.    Based on the facts plead at ¶¶ 9 - 23 above and elsewhere herein this complaint, each of the Plaintiffs suffered discrimination in violation of this FHA

Complaint
CASE #

section.  Specifically, Plaintiffs allege that Defendants actions in unlawfully denying the reasonable accommodation request and also reasonable modification request for Plaintiff 011 Member to make the requested reasonable modifications, was a violation of all the Plaintiffs' rights under the FHA.  The FHA requires that "….[f]or the purposes of this subsection, discrimination includes-- (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling…" 42 § 3604(f)(3)(B). In this case Plaintiff, via the club, sent a certified letter to Defendants requesting a reasonable accommodation related to the rental office and the rental process. Before the Plaintiff wrote the request the Plaintiff investigated where to make the request. However, the Plaintiff will not able to determine where to make the request. Therefore, the Plaintiff mailed the request to the manager of the apartments. The Plaintiff never received a response to the request. Therefore, the Defendant failed to engage in the interactive process to determine the request. In this matter the Plaintiff is seeking an order requiring the Defendant to have a reasonable accommodation process and to inform perspective renters regarding how to make the request. Plaintiffs made a reasonable modification request that Plaintiff 011 Member be permitted to install grab bars within the apartment and to have disabled parking space available for his use. Defendants improperly denied Plaintiffs requests to modify Defendants' rules and procedures.  Defendants' improper actions constitute discrimination against each of the Plaintiffs in violation of this FHA subsection, as unlawful discrimination on the basis of disability and familial status. Wherefore, Plaintiffs suffered injury as a result of Defendants actions, and Plaintiffs now pray for damages, injunctive relief, and other relief as hereinafter stated.

Complaint
CASE #

CLAIM III:  Discrimination In Violation of 42 § 3604(f)(2)

35.    Based on the facts plead at ¶¶ 9 - 23 above and elsewhere herein this complaint, Plaintiff Club suffered discrimination in violation of this FHA section. The relevant FHA statute states it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person… § 3604(f)(2) [emphasis added].   Plaintiff Club and Plaintiff Member 011 are not required to have an interest in renting a particular property or dwelling to have standing. *Smith v. Pacific Properties and Development Corp* at 1099 [ *Smith* court held a disabled person does not have to have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation to enforce the rights created by § 3604(f)(2)].   However, as previously stated, Plaintiff 011 Member was a prospective renter and Plaintiff Club was also seeking rental housing on the behalf Plaintiff 011 Member.  ¶¶9 – 23 above.  In the instant case, Defendant's rental office located on the property is a "facility" in connection with the rental of a dwelling and the on-site rental services provided within the rental office fall within the FHA statute.  In the instant case, Plaintiffs both assert that Defendant's failure to remove architectural barriers to permit access to Defendant's on-site rental services contained within the office is a separate, independent, actionable violation of this FHA section § 3604(f)(2). Plaintiffs have alleged that Defendant failed to provide compliant disabled parking, failed to provide an accessible exterior path of travel to the office entrance due to the presence of step changes in level, failed to provide an accessible office since the office entrance door threshold in too high to be accessible, and the office entrance door operating hardware not accessible to open.  See also FAC ¶¶10-11.  The 9th Circuit *Smith* court has stated that the mere observation of overt architectural barriers is actionable.  *Smith* at 1104 ["To read an additional standing requirement

Complaint
CASE #

into the statute beyond mere observation, however, ignores that many overtly discriminatory conditions, for example, lack of a ramped entryway, prohibit a disabled individual from forming the requisite intent or actual interest in renting or buying *for the very reason* that architectural barriers prevent them from viewing the whole property in the first instance" (emphasis in original)].  The *Smith* court found the Defendants liable under this FHA subsection even though  that case did not involve  Title III claims.  However, Plaintiffs did not just allege that Plaintiffs observed Defendant's overt architectural barriers, but Plaintiffs alleged that Plaintiff 011 Member experienced the barriers, and this caused his denial of equal access to Defendant's office facility and its rental services located therein.  Defendant also discriminated against Plaintiffs by failing to modify its practices and policies to provide access via other methods of access to its rental services provided within the rental office.   Defendant's failure to remove the architectural and communication barriers to access its facilities and the rental services located therein, or to provide other methods of access to the office facility, providing rental services constitutes the prohibited discrimination, separately and independently.

36.    Additionally, while not necessary to find primary liability directly within this FHA section as stated in paragraph 50 above, without reference to any other statute, Defendant's conduct is also prohibited under ADA Title III and constitutes a second, separate source of discrimination against Plaintiffs in violation of FHA § 3604(f)(2).  Plaintiffs assert that any discriminatory conduct in violation of ADA Title III, especially since it specifically involves the express reference to the office facilities and rental services located therein, also constitutes prohibited "discrimination" under FHA § 3604(f)(2).

37.    Plaintiffs suffered the injury of discriminatory conduct by Defendant and Plaintiffs suffered damages as a result.  Plaintiffs seek injunctive relief as well as damages, both of which are available under 42 USC § 3613(c).  Even if its later

Complaint
CASE #

determined that prospective injunctive relief is not available to Plaintiffs, Plaintiffs are still permitted to recover damages. *Harris v Itzakhi*, 183 F.3d 1043, 1050 (9th Cir 1999) [During the appeal in *Harris* case, the plaintiff therein moved Three Thousand (3000) miles away and her injunctive claims became moot. However, Plaintiff's claim for the retrospective relief of damages were unaffected]. Plaintiffs damage claims survive even if prospective relief is not available.

CLAIM IV:  Discrimination In Violation of 42 § 3604(c) As To NSA

38.    Based on information, belief, and the facts plead at ¶¶ 9 – 23 above and elsewhere herein, Plaintiffs herein alleges that Defendants caused Club to suffer the injury of discrimination since Defendants violated 42 U.S.C. §§ 3604 (c) with respect to its notices, statements, and advertisements ("NSA"). Plaintiffs allege that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.

39.   In the present case, Defendant advertises the subject property on webs sites it controls and others, including but not limited to the following websites: apartments.com and forrent.com.

40.    Plaintiffs allege that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures. Plaintiffs allege that Defendants existing advertisements on websites is directed toward persons who do not have disabilities.

It is alleged that Defendants: made, printed, or published, or cause to be made, printed, or published any notice, statement, or advertisement,[1] with respect to the rental of a dwelling that discrimination based on handicap; discriminated in the

[1] 24 CFR 100.75 - Discriminatory advertisements, statements and notices.

Complaint
CASE #

rental, or to otherwise make unavailable or deny, a dwelling to any renter because of a handicap of—(A) that renter, (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or (C) any person associated with that renter; discriminated against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so rented, or made available; or (C) any person associated with that person; discriminated by—(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted; (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. The FHA was passed in 1968 then amended in 1988 before the Internet was widely used. In the present day, landlords publish notices on the Internet. Plaintiff Club caused certain such notices to be downloaded and reviewed them. In the present case, none of Defendants' Internet advertising adhered to the guidelines within 24 CFR 109 or had the following:

> Equal Housing Opportunity Statement: We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing

Complaint
CASE #

because of race, color, religion, sex, handicap, familial status, or national

origin.

Equal Housing Opportunity Slogan: "Equal Housing Opportunity."

Table III

Illustration of Media Notice--Publisher's notice: All real estate advertised

herein is subject to the Federal Fair Housing Act, which makes it illegal to

advertise "any preference, limitation, or discrimination because of race, color,

religion, sex, handicap, familial status, or national origin, or intention to make

any such preference, limitation, or discrimination."

We will not knowingly accept any advertising for real estate which is in

violation of the law.

All persons are hereby informed that all dwellings advertised are available on

an equal opportunity basis.

41.    In the present case, Defendants had the opportunity, based upon either the

large number of models used in an advertisement or the numerous advertisements

placed by an advertiser with a particular publisher, to include models of persons

with handicaps, a protected group under the FHA. Plaintiffs allege that Defendant

engages in disparate treatment with respect to Defendants' internet Notices,

Statements, and Advertisements as to the amenities being offered to people without

disabilities and people with disabilities.   Plaintiffs can establish liability based on

the "ordinary reader" standard. Defendants' Internet advertising uses selective media

or content exclusively to cater to the majority population without disabilities.

Further, the said advertising uses catch words, symbols or logotypes and

colloquialisms that suggest a preference for people without disabilities. Moreover,

the selective placement of the equal housing opportunity logo suggests a preference

for people without disabilities. Further, none of the human models used in the said

Complaint
CASE #

advertising have a known disability. In addition, the said advertising fails to conform to the advertising requirements delineated in Appendix I, Tables I-III of 24 CFR 109. Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models of a protected group.

42.    Plaintiffs allege that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities. Plaintiff Club alleges that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures.  Plaintiff Club alleges that Defendants existing advertisements on websites is directed toward persons who do not have disabilities.

43.    Plaintiffs allege that Defendants notices, statements, and internet advertisements suggests to an ordinary reader that Defendants have a preference to attract tenants without handicap or disabilities and the persons associated with them. Plaintiffs allege Defendant engages in discriminatory treatment as against Plaintiff 011 Member with respect to Defendants internet Notices, Statements, and Advertisements, as to the amenities being offered to people without disabilities and people with disabilities.   Defendants notices, statements, and advertisements ("NSA") deterred Plaintiffs and other members of the disability public from going to or renting Defendants apartments.    Defendant's NSA fail to provide any information as to any alternative methods of access to the inaccessible features. Plaintiffs allege that the present Defendant landlord uses its NSA to inform potential tenants about the apartments so they do not need to physically visit the place to make housing choices. However, prospective tenants with disabilities are forced to call or physically visit a place to assess the physical access amenities, policies,

Complaint
CASE #

procedures that affect their disabilities.  Due to Defendant's discriminatory notices, statements, and advertisements, Plaintiffs suffered disparate discriminatory treatment due to Defendant's failure to comply with the FHA in that Plaintiff Club and Plaintiff 011 Member needed to physically visit the property to ascertain its physical accessibility, and its leasing policies and procedures that affect Plaintiff 011 Member as a person with disabilities.  As a result, Plaintiffs suffered the denial of equal access prohibited under Plaintiff's ADA claims as stated above. Additionally, Plaintiffs allege Defendant engages in disparate treatment with respect to Defendants internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities and Plaintiffs suffered discriminatory treatment, including but not limited to the following examples. Under the FHA and ADA, a companion service dog is not a pet.  The FHA and ADA prohibit any extra charges for companion or service dogs. Defendant landlord expects prospective tenants to obtain information about its apartments from its internet NSAs, yet its companion and service animal policy is not available on the internet.  Plaintiffs potentially will also need to personally undertake the expense to modify any rental unit to accommodate his disabilities including, but not limited to, such issues as providing accessible parking in close proximity to a potential rental unit, grab bars in the restroom, installation of accessible sink and shower faucets, potentially replacing door operating hardware with accessible hardware, potential ramp at the rental unit entrance door, etc. Additionally, Defendant's apartment common areas may need to be reasonably modified by Plaintiff Club, ie such as any common area grill spaces, etc. Defendant's NSA do not provide any information as to their reasonable modification or accommodation policies, if any.

44.    Also, Defendant's internet website NSA are not accessible visually since one

is not able to click and increase the NSA font size to make it more readable for persons with impaired vision.  Additionally, Defendant's internet NSAs fail to be offered in alternative methods.  The offices and common areas offer services. Even if the facilities were constructed before March 13, 1991 and the physical barriers are not readily achievable to remove, the services offered in the facilities must be accessible.

45.    Plaintiffs allege Defendant's internet and other Notices, Statements, and Advertisements do not state the accessible amenities at all and an ordinary person would conclude it is only directed towards persons without disabilities.  Plaintiff alleges that Defendant's use of the "equal housing opportunity statement" is also misleading. Defendant's apartment property is not accessible. Prospective tenants with disabilities including Plaintiff Club are forced to physically visit a place to assess the access amenities while persons without disabilities do not.  All the above facts stated herein have and did have a discriminatory impact on Plaintiff Club and on the disability community in violation of 42 U.S.C. § 3604(c), § 3604(f)(1-2). Plaintiff Club personally experienced the discriminatory conduct as stated above in violation of the FHA.

46.    Wherefore, Plaintiff was injured, and prays for damages and other relief as hereinafter stated.

CLAIM V:  Discrimination In Violation of 42 § 3604(f)(1)

47.    Based on the facts plead at ¶¶ 9 – 23, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of this FHA section.  Defendant caused Plaintiffs to suffer disparate impact discrimination.  The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A)

Complaint
CASE #

that buyer or renter; (B) <u>a person</u> residing in or <u>intending to reside</u> in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added]. The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not require a showing of intent. *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015) [ the statutory phrase "<u>to otherwise make unavailable or deny</u>" – the very same statutory language as also used in §3604(f)(1)]. Our Ninth Circuit Court of Appeals previously had reached that same conclusion. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Cir 1982).    Based on the facts plead at ¶¶ 9 – 23, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of FHA §3604(f)(1).  Wherefore, Plaintiffs were injured, and prays for damages and other relief as hereinafter stated.

CLAIM VI: <u>**Violation of California Fair Housing Act**</u>

48.    Based on information, belief and the facts stated above, Plaintiffs allege that Defendants violated the California Fair Employment and Housing Act.  Based on information, belief and the facts stated above, Plaintiffs allege that Defendants failed to design and construct a covered multifamily dwelling in a manner that allows access to and use by disabled persons by providing, at a minimum, the following features in violation of California Government Code, Title 2, §12955.1: (1) All covered multifamily dwellings shall have at least one building entrance on an accessible route, unless it is impracticable to do so because of the terrain or unusual characteristics of the site. The burden of establishing impracticability because of terrain or unusual site characteristics is on the person or persons who designed or constructed the housing facility. (2) All covered multifamily dwellings with a

Complaint
CASE #

building entrance on an accessible route shall be designed and constructed in a manner that complies with all of the following: (A) The public and common areas are readily accessible to and usable by persons with disabilities. (B) All the doors designed to allow passage into and within all premises are sufficiently wide to allow passage by persons that use mobility devices.  (C) All premises within covered multifamily dwelling units contain the following features of adaptable design: (i) An accessible route into and through the covered dwelling unit. (ii) Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations. (iii) Reinforcements in bathroom walls to allow later installation of grab bars around the toilet, tub, shower stall, and shower seat, where those facilities are provided. (iv) Usable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space.  Defendants failed to design and construct 10 percent of the multistory dwelling units in buildings without an elevator that consist of at least four condominium dwelling units or at least three rental apartment dwelling units in a manner that incorporates an accessible route to the primary entry level entrance and that meets the requirements of paragraph (2) of subdivision (a) with respect to the ground floor, at least one bathroom on the primary entry level and the public and common areas. Any fraction thereof shall be rounded up to the next whole number.

49.   Based on information, belief and the facts stated above at ¶¶ 9 – 23 above and elsewhere in this complaint, Plaintiffs allege that Defendants refused to make the reasonable accommodations in rules, policies, practices, or services in violation of CA Government Code sections 12927 and 12955.2, when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.  As stated in detail above in ¶¶62-63, Defendants refused to make reasonable accommodations with the instant Plaintiffs and discriminated against

Complaint
CASE #

each of them on the basis of disability

50.    Wherefore, Plaintiffs were injured by Defendants' conduct, and Plaintiffs pray for injunctive relief, damages, and other relief as hereinafter stated.

**DEMAND FOR JUDGMENT FOR RELIEF:**

A.    Both Plaintiffs seeks injunctive relief pursuant to 42 U.S.C. 3613(c);  and CA Civil Code §52.  Pursuant to 42 U.S.C. 3613(c), Plaintiffs request this court to enjoin Defendants to cease their discriminatory practices in housing rentals and housing management services;

C.    For $4,000 in minimum statutory damages pursuant to Cal. Civil Code § 52 for each and every offense of Civil Code § 51, pursuant to <u>Munson v. Del Taco</u>, (June 2009) *46 Cal. 4th 661*;

D.    In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph C above, for $1,000 in minimum statutory damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1;

E.    For attorneys' fees pursuant to 42 U.S.C. 3613(c)(2),  and Cal. Civil Code §§ 52, 54.3;

F.    For treble damages pursuant to Cal. Civil Code §§ 52(a) or 54.3(a);

G.    A Jury Trial and;

H.    For such other further relief as the court deems proper.

Respectfully submitted:

Dated:  November 11, 2017

LAW OFFICES OF DAVID C. WAKEFIELD

By:    /s/David C. Wakefield
       DAVID C. WAKEFIELD, ESQ.
       Attorney for Plaintiff

Complaint
CASE #